Jackie Bernice BOLES,
Plaintiff-Appellee,

v.

LA QUINTA MOTOR INNS, a Texas
corporation, Defendant-Appellant.

No. 81–2098.

United States Court of Appeals,
Fifth Circuit.

July 21, 1982.

Rehearing Denied Aug. 30, 1982.

Groce, Locke & Hebdon, Thomas H. Crofts, Jr., San Antonio, Tex., for defendant-appellant.

Bonds, Matthews, Bonds & Hayes, Albert R. Matthews, Dan L. Matthews, A. Camp Bonds, Jr., Muskogee, Okl., Arnulfo Gonzalez, Jr., Laredo, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

This suit was brought by Jackie Bernice Boles against La Quinta Motor Inns for personal injuries sustained while she was a guest at La Quinta Motor Hotel in Laredo, Texas. On October 14, 1977, Mrs. Boles was raped while she was a guest at the motel. As she opened the door to her motel room one evening, an attacker pushed her inside and raped her. The rapist bound and gagged her and left, threatening to return and kill her. Alone in the pitch-dark room, Mrs. Boles managed to kick the telephone receiver off the hook, and, while still bound, she managed to contact the motel front desk. Mrs. Boles identified herself to the desk clerk and told her that she had been raped and robbed and that she thought the rapist would come back and kill her. There was a long period of silence. After a while someone came to the telephone and asked her who she was. She identified herself once again and asked for help. She further testified that she talked to a woman on two separate occasions and a man on one occasion before anyone made an attempt to call the police. After a lengthy pause a woman came on the line and stated that she had called the police. Mrs. Boles then asked if someone was going to help her and was told by the desk clerk, "No, we won't be coming down." The clerk then said, "Mrs. Boles, we have called the police. Would you hang up the telephone?" Mrs. Boles replied, screaming, "I don't even know where the phone is. How can I hang it up?" The desk clerk replied sarcastically, "Well, Mrs. Boles, if you don't know where the telephone is, how did you call us?"

The clerk then called the relief managers, Mr. and Mrs. Hill, both of whom proceeded to Mrs. Boles' room and waited outside. They and the manager, Mrs. Walding, were waiting outside Mrs. Boles' room when the police arrived. Mrs. Boles was therefore left in her dark room for about 20 to 25 minutes. She testified that she was terrified the entire time, thinking that her attacker would return. She was unaware that several people were listening to her screams just outside her room, as none of these persons tried to soothe her fears.

Mrs. Boles brought this diversity suit against La Quinta, alleging: (1) that the motel was negligent in failing to maintain a safe, well-lit corridor and (2) that the motel employees were negligent in the manner in which they responded to her call for help. In answer to special interrogatories, the jury found that although La Quinta was negligent in not maintaining a safe corridor, this negligence was not the legal cause of the rape. However, the jury found in plaintiff's favor on her second claim—that the hotel employees were unreasonably dilatory in coming to her aid and that this delay contributed to her physical and psychic injuries. The jury found that the negligence of the employees was the legal cause of the damages and awarded $35,000 from the date of the attack to the date of trial and $43,000 for future damages. The district court rendered judgment and denied defendant's motion for judgment notwithstanding the verdict.

La Quinta appeals, contesting the liability of the motel and, alternatively, claiming there was not substantial evidence to support the jury's finding of $43,000 for future damages. We conclude that there was substantial evidence on which to find that the employees of La Quinta Motor Inns were negligent in the manner in which they responded to Mrs. Boles and to support a future damage award of $43,000.

The district court properly denied La Quinta's motion for a directed verdict and judgment n. o. v. under the standards set out in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc):

On motion for directed verdict and for judgment notwithstanding the verdict

the court should consider all of the evidence—not just the evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of facts, and not the court, to weigh conflicting evidence and inferences and determine the credibility of the witnesses.

*Id.* at 374–75.

■ Under Texas law, a duty of ordinary care is owed by a hotel to its guests. *Cain v. George*, 411 F.2d 572, 573 (5th Cir. 1969); *Burrous v. Knotts*, 482 S.W.2d 358, 360 (Tex.Civ.App.—Tyler 1972, no writ). The case of *Texas Hotel Co. v. Cosby*, 131 S.W.2d 261, 262 (Tex.Civ.App.—Texarkana 1939, writ dism'd, judgment correct), is illustrative of the theory that an innkeeper can be held liable for the manner in which he responds to a guest's peril. In the *Cosby* case, the plaintiff sued for personal injuries sustained in jumping from a third-story window of the defendant's building during the progress of a fire. Among the grounds for which the jury found in favor of the plaintiff was that the defendant hotel was

negligent in failing to warn the plaintiff of the fire after it had been discovered and that this failure to warn was negligence and the proximate cause of the injuries. Thus, whether the defendant's employees used reasonable care in the present case is a question for the jury. It is also clear that under Texas law a restaurant or motel owner owes his invitees the duty of reasonable care to protect them from assaults by third persons while on the premises. *Eastep v. Jack-in-the-Box*, 546 S.W.2d 116, 118 (Tex. Civ.App.—Houston 1977, writ ref'd n. r. e.).

■ La Quinta argues, however, that the duty of ordinary care is discharged by promptly notifying the police and cites mostly barroom brawl-type cases to this effect. La Quinta argues that a reasonably prudent person would not have gone to Mrs. Boles' room and that La Quinta employees were motivated by reasonable fears for their own personal safety in refusing to do so. The problem is that there is no evidence that the hotel employees ever feared that the rapist was still in Mrs. Boles' room. In fact, the desk clerk testified that she told Mrs. Boles that she would not go to her room because she had to attend to her front desk duties, and Mrs. Boles testified that she informed the desk clerk that the rapist had left and that she was afraid that he would return. Under the *Boeing* standard of viewing the evidence in the light most favorable to the jury verdict, we cannot overturn the jury finding of negligent delay by La Quinta employees. The fact that three hotel employees stood outside of Mrs. Boles' room listening to her screams and moans without even calling to reassure her, combined with the callous manner in which she was treated by the desk clerk, is adequate evidence to support a finding that the motel did not use ordinary care in protecting Mrs. Boles.

■ La Quinta further urges that it should not be held liable because Mrs. Boles' injuries were not foreseeable to the employees.[1] Mrs. Boles testified that the delay in

---

1. Foreseeability is merely one element of negligence. If the defendant could not reasonably foresee any injury as the result of his act, or if

**1080**

getting anyone to come to her room aggravated both her physical injuries (the chafing caused by the bindings) as well as her mental anguish. La Quinta argues that its employees were not required to anticipate these "improbable" consequences. This argument is not convincing. The motel employees knew that Mrs. Boles was alone, bound in her room, fearing for her life. A reasonably prudent person would have anticipated mental anxiety and possible bodily injury resulting from the delay.

Finally, La Quinta asserts that there is no substantial evidence that the manner of response was a legal cause of any damages continuing into the future, and it was therefore error for the district court to award $43,000 in future damages. La Quinta contends that Mrs. Boles did not relate her future problems to the manner of the response as opposed to the rape itself.

A reading of the testimony of Dr. Freedman, the psychiatrist who treated Mrs. Boles, establishes that she suffered two traumatic events—one occurring during the time of the rape and the second occurring after the rape and during the time she was waiting to be rescued. Dr. Freedman was also asked to make a distinction between a case where a woman was raped and promptly rescued and a case such as the instant one where there was a 20-minute delay in the rescue of the victim. Dr. Freedman expressed the opinion that the person suffering the time delay in being rescued would sustain a greater impact and more injury and symptoms. He also was of the opinion that her problems would be more significant and more intense. He further stated that the longer a person is in a situation of stress, the more problems she would have later.

La Quinta seeks to exclude this opinion testimony of Dr. Freedman because at one point he testified that there was a "possibility" of the increased problems. However, the total medical testimony of Dr. Freedman shows the causal connection between the second traumatic event and the mental injuries suffered by Mrs. Boles and establishes the required reasonable probability. "Reasonable probability, in turn, is determinable by a consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase." *Insurance Co. of North America v. Myers*, 411 S.W.2d 710, 713 (Tex.1966).

 Since there was sufficient evidence for the jury to find that the employees of La Quinta were negligent in responding to Mrs. Boles, and because the psychiatrist testified that she sustained injuries from this tortious conduct, future damages are rightly recoverable.

We find no merit in any of the appellant's contentions and therefore affirm the judgment of the district court.

AFFIRMED.

---

the conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability. W. Prosser, Handbook of the Law of Torts § 43 (1971). Because the damages in this case were foreseeable, we do not address the question of liability for unforeseeable damages.